[Civ. No. 16383.   Second Dist., Div. Three.   Dec. 6, 1948.]

ALIS BAKER, as Administratrix, etc., Respondent, v. FRED R. SALTER et al., Defendants; IRENE CULVER SALTER, as Administratrix, etc., Appellant.

Harold L. Green for Appellant.

Julius V. Patrosso for Respondent.

VALLÉE, J.—Appeal by defendant Fred R. Salter from a judgment for plaintiff, against said defendant only, in an action to recover the balance of the purchase price of street improvement bonds sold and delivered by plaintiff's intestate, referred to as Baker, to Salter. Salter died after the entry of the judgment, and the administratrix of his estate was substituted in his place.

In conformity with the allegations of the complaint the trial court found that in the month of August, 1944, Baker and Salter entered into an agreement wherein and whereby Baker agreed to sell to Salter, and Salter agreed to purchase from Baker, bonds of the par value of $61,326.77 to be issued under County Improvement District No. 1089 of the County of Los Angeles, as, if, and when the same were issued, and that Salter promised and agreed to pay Baker therefor the par value thereof; that the bonds were delivered to Salter on September 7, 1945, and he paid on account thereof $58,260.43 leaving an unpaid balance of $3,066.34, for which judgment was entered in favor of Baker's intestate.

The sole question for decision is whether there is any evidence to support the finding that the price agreed to be paid for the bonds was the par value thereof. Appellant claims that the finding is unsupported by the evidence.

Salter testified that in August, 1944, he agreed to purchase the bonds from Baker and to pay therefor the par value thereof. He also testified that on August 22, 1945, he sent a letter to Baker with respect to the bonds. The letter is in evidence. It confirms that the agreement was to pay par for the bonds. The bonds of the par value of $61,326.77 were delivered to Salter on September 7, 1945, by a bank pursuant to directions of Baker. Salter paid the bank $58,240.43, which was 95 per cent of the par value of the bonds, at the time of their delivery for the account of Baker. Baker had purchased the bonds from the contractor who had constructed the improvement. He paid the contractor $58,240.43 for them. Baker died September 10, 1945. After the delivery of the bonds and prior to the commencement of this action, in a conversation with an attorney for Baker's intestate in response to the latter's request for payment of the balance of the purchase price of the bonds, Salter admitted that he was indebted to

Baker's estate for the balance of the purchase price and that he intended to pay the money due. Also, after the delivery of the bonds, Salter, in effect, told an underwriter of improvement bonds that there was a balance due on the bonds he had purchased from Baker. Salter admitted the conversation with the underwriter and testified that he (Salter) had told him that he had not paid Baker's estate because he had incurred interest as a result of delay in the delivery of the bonds. The foregoing evidence supports the finding that the purchase price agreed to be paid by Salter was the par value of the bonds.

The contract for the improvement was let October 24, 1944. Appellant's argument is to the effect that it is incredible that Salter agreed to purchase bonds in the face amount of $61,326.77 two months before the contract for the improvement was let. The point is not material. While appellant urges here that the evidence does not support the finding that the agreement to purchase the bonds was made in August, 1944, he concedes that he purchased from Baker bonds of the par value of $61,326.77. He conceded in the trial court, and he concedes here, that he contracted to purchase the bonds. He says that the contract was not made in August, 1944, but that it was made in August, 1945, and that the contract price was 95 and not par. Having agreed to purchase the bonds and having accepted delivery it is immaterial whether the agreement to purchase was made in August, 1944, or in August, 1945. The only real issue made by appellant in the trial court was whether he had agreed to pay 95 or par. Further, as noted, Salter testified that he had a conversation with Baker in August, 1944, with reference to the purchase of "$61,326.77 principal amount of bonds" and that he told Baker he would take the bonds and pay par for them. In his answer Salter admitted that he agreed to purchase the bonds in August, 1944. At the trial he was permitted to amend by changing 1944 to 1945.

Appellant urges that a letter, dated August 31, 1945, from Baker to the bank which delivered the bonds "constituted and was the contract between the parties." The letter reads as follows: "This will confirm our conversation of even date with reference to the delivery and payment for those certain Bonds to be issued under County Improvement #1089 of Los Angeles County, which under the terms of my purchase agreement with Contractor, M. Miller, dated August 27th, 1944, the said securities were to be delivered to me on the basis

of 95% flat for any and all Bonds issued, save and except an amount in the par value of $33,000.00. In view of the fact that I am unfortunately entering the Hollywood Hospital tomorrow morning for a major operation will make it wholly impossible for me to complete this purchase in person. You will therefore consider this letter as my authority to deliver the said Bonds totaling par value in the amount of $61,326.77 to my nominee, Fred R. Salter of 1100 West Olympic Blvd. this City who will at the time these Bonds are ready for proper delivery present you with cashier's check in the sum of $58,260.43 which is my purchase price for said Bonds.'' Appellant says that this letter is conclusive that the purchase price which he agreed to pay for the bonds was $58,260.43 which was on the basis of 95 per cent of their par value. A cursory reading of the letter demonstrates that 95 was the price Baker was paying the contractor for the bonds. There is nothing in the letter which even suggests that the price which Salter was to pay for the bonds was the same amount which was to be paid by Baker for them.

Appellant also urges that the testimony of admissions by Salter is insufficient to justify a finding of breach of contract by him. The argument is ''that a pre-existing consideration moving to the party to be charged or a pre-existing contract must be established'' before the admissions may be considered. Obviously, the trial court did not predicate its findings wholly upon the admissions. The argument entirely disregards the fact that there was independent evidence of a ''pre-existing contract.''

Appellant discusses other evidence at length, all of which merely created a conflict for the determination of the trial court. We repeat what this court and all other reviewing courts in this state have said again and again that we have no power to substitute our deductions for those of the trial court. (*Khoury* v. *Barham,* 85 Cal.App.2d 202, 210 [192 P.2d 823].)

The appeal is wholly without merit.

Judgment affirmed.

Shinn, P. J., and Wood, J., concurred.